878 P.2d 353

**Martin LUCERO, Worker–Appellant,**

v.

**SMITH'S FOOD AND DRUG CENTERS, INC., self-insured, Employer– Appellee.**

**No. 15109.**

Court of Appeals of New Mexico.

June 8, 1994.

Certiorari Denied July 19, 1994.

Jerry A. Walz, Jerry A. Walz & Associates, P.C., Albuquerque, for worker-appellant.

Kelly A. Genova, Albuquerque, for employer-appellee.

*OPINION*

PICKARD, Judge.

■ Worker appeals from an order granting summary judgment for Employer in a workers' compensation case. Worker sought scheduled injury benefits under NMSA 1978, Section 52–1–43 (Repl.Pamp.1991). The ultimate question before us is whether Worker established a disputed issue of material fact as to his entitlement to benefits for partial loss of use of his left elbow. *See Koenig v. Perez*, 104 N.M. 664, 665–66, 726 P.2d 341, 342–43 (1986) (standards for summary judgment). The answer depends in part on whether proof of an impairment, as defined in NMSA 1978, Section 52–1–24(A) (Repl.

Pamp.1991) (Effective Jan. 1, 1991), is essential for recovery under Section 52–1–43. We hold that such proof is not required and that Worker raised a fact issue on the critical question of loss of use of a specific body member. Accordingly, we reverse. In view of the bases for our disposition, we find it unnecessary to address Worker's issues regarding the construction and constitutionality of Section 52–1–24(A).

Worker injured his left elbow on September 2, 1991, while working for Employer. As a result of that injury, Worker developed medial epicondylitis, commonly known as tennis elbow. 1 Roscoe N. Gray & Louise J. Gordy, *Attorneys' Textbook of Medicine* ¶ 4.72 (3rd ed. 1994). Employer's motion for summary judgment was predicated on the argument that Worker did not suffer a loss of use under Section 52–1–43 because there was neither evidence of an impairment as defined in Section 52–1–24(A) nor evidence of a medical restriction.

In response to the motion, Worker noted that Section 52–1–43 provides for compensation in the event of loss of use of a specific member and that the statute by its terms does not require a percentage impairment rating. The pertinent provisions of Section 52–1–43 are as follows:

A. For disability resulting from an accidental injury to specific body members, including the loss or loss of use thereof, the worker shall receive the weekly maximum and minimum compensation for disability as provided in Section 52–1–41 NMSA 1978 [total disability benefits], for the following periods:

. . . .

(2) one arm at elbow, dextrous member . . . 160 weeks

. . . .

(5) one arm at elbow, nondextrous member . . . 155 weeks. . . .

B. For a partial loss of use of one of the body members or physical functions listed in Subsection A of this section, the worker shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function.

Employer contends that in order to recover benefits under Section 52–1–43, a claimant must show that he suffers an impairment as defined in Section 52–1–24(A). Counsel for the parties stated at oral argument that the failure of Worker to present qualifying evidence under Section 52–1–24(A) precipitated the judge's decision to grant summary judgment for Employer. Section 52–1–24(A) states:

A. "impairment" means an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment or comparable publications of the American medical association. Impairment includes physical impairment, primary mental impairment and secondary mental impairment; . . . .

Employer argues that the concept of impairment as defined in Section 52–1–24(A) must be incorporated into the scheduled injury statute in order to be consistent with *Twin Mountain Rock v. Ramirez*, 117 N.M. 367, 871 P.2d 1373 (Ct.App.), *cert. denied*, 117 N.M. 801, 877 P.2d 1105 (1994) [(Ct.App. 1994)], which excluded the concept of disability with respect to the harms covered by the scheduled injury section. In *Twin Mountain Rock*, we said that scheduled injury "benefits are due even absent proof of disability caused by the loss or impairment." *Id.* at 370, 871 P.2d at 1376. While we agree with a part of Employer's premise, we disagree with the conclusion Employer draws.

In *Witcher v. Capitan Drilling Co.*, 84 N.M. 369, 371, 503 P.2d 652, 654 (Ct.App. 1972), *cert. quashed*, 85 N.M. 380, 512 P.2d 953 (1973), we examined a predecessor to Section 52–1–43(A) and determined that the word "disability" therein meant "physical impairment" and not inability to work, as was the usual definition of "disability." *See also Hise Constr. v. Candelaria*, 98 N.M. 759, 760, 652 P.2d 1210, 1211 (1982) ("The scheduled injury section does not take into consider-

ation the occupation of the worker and how the loss of the specific member of the body may affect his or her ability to perform the duties of his or her job.") *overruled on other grounds by Garcia v. Schneider, Inc.,* 105 N.M. 234, 731 P.2d 377 (Ct.App.1986). Thus, there is some support for incorporating a concept of "impairment" into Section 52–1–43. However, we are not prepared to take the next step urged by Employer—that the concept of physical impairment heretofore incorporated into Section 52–1–43(A) must be identical to the definition of impairment now expressed in Section 52–1–24(A).

We are unwilling to accept Employer's argument for several reasons. First, no later opinion has called into question either the statement in *Witcher* that disability means "physical impairment" or the definition of that term as expressed in judicial opinions. *See, e.g., Perez v. International Minerals & Chem. Corp.,* 95 N.M. 628, 635, 624 P.2d 1025, 1032 (Ct.App.1981) (the term means a defect or infirmity limiting or making useless a member or limb of the body). The current version of the scheduled injury section contains the same language as was construed in *Witcher.* Also, that identical statutory language continues to be used in the same context; in other words, the relationship between total and partial disability on the one hand and scheduled injuries on the other hand is unchanged. Accordingly, we should presume that the legislature intended a similar construction when it enacted Section 52–1–43 in 1987 and then did not alter the language when it made wholesale changes to the workers' compensation statutory scheme in 1990. *See Twin Mountain Rock,* 117 N.M. at 370, 871 P.2d at 1376.

That the legislature did not intend to mandate use of the American Medical Association's (AMA) guides is also demonstrated by consideration of the history of the applicable provisions of the statute. In 1986, when the legislature began its series of major changes in the workers' compensation laws, it inserted a requirement in the "interim" or "second" act that percentage loss of use in the scheduled injury section be determined in accordance with the AMA guides as well as a requirement that all partial disability be de-termined in accordance with the AMA guides. *See* NMSA 1978, §§ 52–1–25, –43(B) (Cum.Supp.1986) (Effective until July 1, 1987). The "third" act, however, removed references to the AMA guides in both the partial disability and scheduled injury sections. *See* NMSA 1978, §§ 52–1–26(B), –43(B) (Repl.Pamp.1987). When the "fourth" act was passed, the AMA guides made their reappearance, but only in the sections governing partial disability. *See* NMSA 1978, §§ 52–1–24(A), –26 (Repl.Pamp. 1991) (Effective Jan. 1, 1991). Significantly, the scheduled injury section in the "fourth" act was left unchanged and did not contain reference to the AMA guides as it had in the "interim" act. *See* NMSA 1978, § 52–1–43(B) (Repl.Pamp.1991).

"When the legislature enacts a new statute, we presume that it intended to establish new law or to change law as it previously existed." *Leyba v. Renger,* 114 N.M. 686, 688, 845 P.2d 780, 782 (1992). As applied to this case, in which the AMA guides appeared in the scheduled injury section in the "interim" act but were not mentioned in the "fourth" act when the legislature went back to the concept of AMA guides for some purposes, *Leyba* indicates that we should not incorporate the AMA guides into the current scheduled injury section.

Employer has suggested that the lack of reference to AMA guides in the scheduled injury section is a legislative oversight comparable to the lack of reference to the AMA guides that we addressed in *Barela v. Midcon of New Mexico, Inc.,* 109 N.M. 360, 785 P.2d 271 (Ct.App.), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989). In light of the history of the changes to the workers' compensation acts which we have detailed above, we cannot agree. Moreover, as noted in *Twin Mountain Rock,* the scheduled injury section has always been construed independently of disability concepts. *Twin Mountain Rock,* 117 N.M. at 369–70, 871 P.2d at 1375–76. Thus, we cannot say that the incorporation of the concept of impairment according to AMA guides into the disability sections necessarily means that it must be incorporated into the scheduled injury section. *Compare Coslett v. Third St. Grocery,*

**38**

117 N.M. 727, 876 P.2d 656 (Ct.App.1994) (literal reading made little sense in view of history, purpose, and other statutory contexts in which language at issue was used); *Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 878 P.2d 1009 (Ct.App.1994) (presence of word in one section of legislation and absence from another was a function of drafting imprecision rather than a matter which distinguished the sections).

■ Employer has also suggested that the degree of partial loss of use which may lead to an award under Section 52–1–43(B) cannot be measured without reference to the AMA guides. We are not persuaded. The absence of a requirement of reference to the AMA guides has not historically prevented determinations of percentage loss of use. *See, e.g., Webb v. Forrest Currell Lumber Co.,* 68 N.M. 187, 360 P.2d 380 (1961) (affirming judgment for 36.2% of the amount provided for total blindness of one eye); *Cisneros v. Molycorp, Inc.,* 107 N.M. 788, 790, 765 P.2d 761, 763 (Ct.App.) (affirming scheduled injury award based on medical testimony that claimant suffered 54.96% hearing impairment), *cert. denied,* 107 N.M. 785, 765 P.2d 758 (1988); *Roybal v. Chavez Concrete & Excavation Contractors, Inc.,* 102 N.M. 428, 696 P.2d 1021 (Ct.App.1985) (remanding for scheduled injury award based on exact percentage of partial use, rather than for total loss of use, based on finding that claimant suffered from a permanent 15 to 20% impairment of his knee). We do not mean to

imply that evidence based on AMA guides or publications would not be helpful to an understanding of percentage loss of use. Rather, we hold that evidence of that specific character is not required under Section 52–1–43 as that section currently exists.

■ We also hold that Worker presented specific facts sufficient to raise an issue as to loss of use. Specifically, Dr. Diskant testified that Dr. Baca restricted Worker's lifting to nothing more than twenty pounds, and Worker testified that he was unable to do his regular work because it was "real painful." This evidence directly contradicted Dr. Stern's testimony that Worker had a self-limiting condition and that there should be no restriction on his activities. *See Sandoval v. Board of Regents of N.M. State Univ.,* 75 N.M. 261, 263, 403 P.2d 699, 700 (1965) (directly contradictory evidence created a substantial conflict in the facts).

We reverse the order of summary judgment.

IT IS SO ORDERED.

MINZNER, C.J., and FLORES, J., concur.