881 P.2d 714

**Rogelio LEO, Claimant–Appellee and Cross–Appellant,**

v.

**CORNUCOPIA RESTAURANT, Employer, and Mountain States Mutual Casualty Company, Insurer, Respondents–Appellants and Cross–Appellees.**

**No. 14854.**

Court of Appeals of New Mexico.

July 19, 1994.

Certiorari Denied Sept. 1, 1994.

Victor S. Lopez, Agnes Fuentevilla Padilla, Law Office of Victor S. Lopez, Albuquerque, for claimant-appellee and cross-appellant.

Robert Bruce Collins, Donald C. Clifford, Albuquerque, for respondents-appellants and cross-appellees.

Robert M. Aurbach, Gen. Counsel, Gordon S. Sargent, Asst. Gen. Counsel, New Mexico Workers' Compensation Admin., Albuquerque, for amicus curiae, New Mexico Workers' Compensation Admin.

William H. Carpenter, Chairman, New Mexico Trial Lawyers Ass'n, Michael B. Browde, Albuquerque, for amicus curiae, New Mexico Trial Lawyers Ass'n.

## OPINION

DONNELLY, Judge.

Employer and Insurer (Respondents) appeal, and Rogelio Leo (Claimant) cross-appeals, from a compensation order requiring Respondents to pay Claimant compensation for a permanent partial disability of 61%, and a later order directing that Claimant's attor-

ney fees be paid one-half by Claimant and one-half by Respondents.

Respondents contend in their appeal that the Workers' Compensation Judge (Judge) erred as a matter of law in determining Claimant's residual physical capacity under NMSA 1978, Section 52-1-26.4 (Repl. Pamp.1991) (effective January 1, 1991). In his cross-appeal, Claimant contends that (1) the Judge erred as a matter of law in determining the amount of his impairment rating; and (2) the Judge erred as a matter of law in her application of NMSA 1978, Section 52-1-54(F) (Repl.Pamp.1991) (effective January 1, 1991), relating to the award of attorney fees.

After initial briefing, this Court invited the participation of amicus curiae. Both the New Mexico Trial Lawyers Association and the Workers' Compensation Administration submitted amicus briefs. These briefs were of significant assistance to this Court in resolving this case. For the reasons discussed below, we affirm the Judge's determination of Claimant's residual physical capacity, reverse the determination of Claimant's impairment rating, and reverse the determination that Respondents are liable for only one-half of Claimant's attorney fees.

*FACTS*

In April 1991 Claimant was employed as a kitchen helper at the Cornucopia Restaurant (the Restaurant) in Albuquerque. His position was classified as heavy labor. Section 52-1-26.4(C)(1). On April 20, 1991, while working at the Restaurant, Claimant slipped and fell on a stairway, injuring his head and back. He was temporarily totally disabled from that date until February 11, 1992.

Prior to his employment with the Restaurant, Claimant had a history of preexisting heart and lung problems. He also suffered from rheumatic heart disease, asthma, and bronchitis. In 1989 the aortic and mitral valves in his heart were surgically replaced. As a result of the valve replacement, Claimant takes Coumadin, an anticoagulant, and Lanoxin to slow down atrial fibrillation.

Before trial, Claimant made a formal offer of judgment of 20% permanent partial disability; Respondents rejected the offer. Also prior to trial, the Parties stipulated to

Claimant's age, education, vocational preparation, and to the fact that all Claimant's previous employment had involved medium or heavy labor. Following trial, the Judge found, among other things, that: Claimant's preexisting heart and lung conditions together represented a preexisting physical impairment of 58%; the injury to Claimant's back resulted in a permanent physical impairment of 5%; the fall down the stairs did not exacerbate or accelerate Claimant's heart and lung conditions, although the heart and lung conditions imposed significant restrictions on the treatment of Claimant's back condition and on his recovery from the back injury; prior to the injury, Claimant had been performing heavy labor; and after the injury, Claimant's back condition in combination with the heart and lung conditions limited him to performing sedentary jobs. The Judge determined that the degree of Claimant's permanent partial disability should be calculated by use of the statutory formula under NMSA 1978, Sections 52-1-26, -26.1, -26.2, -26.3, and -26.4 (Repl.Pamp.1991) (effective January 1, 1991).

Based on the above facts, pursuant to Section 52-1-26.1, the Judge calculated Claimant's permanent partial disability rating based on an impairment rating of 5% and a residual physical capacity rating of eight, representing the points assigned by statute, when a worker was doing heavy labor before an injury and is limited to sedentary labor after an injury. Based on the formula, the Judge determined that Claimant was 61% permanently partially disabled.

Claimant's attorney then filed a motion for attorney fees. In his motion and supporting documents, Claimant informed the Judge of the offer of judgment made prior to trial. Claimant argued that, under Section 52-1-54(F) (effective January 1, 1991), Respondents should pay 100% of the attorney fees because they rejected an offer of judgment that was far more favorable to them than the decision that was subsequently entered. The Judge held that Section 52-1-54(F) (effective January 1, 1991) did not apply, and entered an order directing that attorney fees be paid one-half by Claimant and one-half by Respondents.

## STATUTORY CONSTRUCTION

 Resolution of each of the issues in this case necessitates inquiry into the meaning and application of certain recent amendments to the Workers' Compensation Act, which became effective January 1, 1991.[1] Thus, we begin our analysis by reviewing several pertinent principles of statutory construction. When the legislature enacts a statute that is clear and unambiguous, it is the duty of the courts to enforce the law as written. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994); *V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993). "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist,* 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992). The determination of whether the language of a statute is ambiguous is a question of law. *See New Mexico State Bd. of Educ. v. Board of Educ.,* 95 N.M. 588, 590, 624 P.2d 530, 532 (1981).

 When faced with an ambiguous statute, the primary task of the courts is to determine the intent of the legislature and construe the statute in a manner that gives effect to that intent. *Helman,* 117 N.M. at 353, 871 P.2d at 1359; *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). In making this determination, the courts look primarily to the language used in the statute. *Klineline,* 106 N.M. at 735, 749 P.2d at 1114. However, we must not be misled by simplicity of language when the other portions of a statute call its meaning into question, or the language of a section of an act conflicts with an overall legislative purpose. *Helman,* 117 N.M. at 353, 871 P.2d at 1359. Thus, in addition to the language of the statute, we may also consider its history and background. *Id.; Klineline,* 106 N.M. at 735, 749 P.2d at 1114.

With these principles in mind, we next examine the series of amendments enacted by the legislature in 1990, which apply to the determination of partial disability. The 1990 amendments followed a series of other substantive legislative changes to the Workers' Compensation Act. *See Coslett v. Third St. Grocery,* 117 N.M. 727, 729–30, 876 P.2d 656, 658–59 (Ct.App.1994); 1 Carlos G. Martinez, *New Mexico Workers' Compensation Manual* § 1.04, at 1–22 to –25 (1993); Kelly Brooks et al., *Workers' Compensation* 22 N.M.L.Rev. 845, 845–47 (1992) (Survey). As noted in *Coslett,* the various changes have often been a reflection of compromises between competing interests. *Coslett,* 117 N.M. at 729–30, 876 P.2d at 658–59.

The changing and competing policy interests behind compensation laws are reflected in the successive legislative changes defining disability. Most compensation laws adopt one of three approaches in defining disability: a definition based on wage loss, a definition based on impairment rating, or a definition based on a reduction in an individual's ability to perform work. 1 Martinez, *supra* § 8.03. Prior to 1986, disability under our Workers' Compensation Act was defined in terms of the capacity to work. *See* NMSA 1978, §§ 52–1–24, –25 (Orig.Pamp.); *Adams v. Loffland Bros. Drilling Co.,* 82 N.M. 72, 74, 475 P.2d 466, 468 (Ct.App.1970). In 1986 the definition was changed to incorporate concepts of all three approaches. NMSA 1978, §§ 52–1–24, –25 (Cum.Supp.1986) (effective until July 1, 1987) (interim act cases); 1 Martinez, *supra* §§ 8.03 to 8.06. In 1987 the statutory definition of disability was again amended to incorporate the concepts of both impairment and inability to perform work. *See* NMSA 1978, §§ 52–1–25, –26 (Repl. Pamp.1987); *Gomez v. B.E. Harvey Gin Corp.,* 110 N.M. 100, 102, 792 P.2d 1143, 1145 (1990); *Martinez v. Darby Constr. Co.,* 109 N.M. 146, 149, 782 P.2d 904, 907 (1989). Martinez observes that, as a practical matter, the definition of disability in the 1987 Act represents a return to the pre–1986 definition of disability. 1 Martinez, *supra* § 8.07.

In 1990 the legislature again amended the definition of disability. Section 52–1–26 (effective January 1, 1991). The definition of

---

1. *See* § 52–1–26 (permanent partial disability) § 52–1–26.1 (determination of partial disability); § 52–1–26.2 (partial disability; age modification); § 52–1–26.3 (partial disability; education modification); § 52–1–26.4 (calculation of disability; physical capacity modification); *see also* § 52–1–54(F) (award of attorney fees in workers' compensation actions).

permanent partial disability under the 1990 legislative amendments continues to rely on concepts of impairment and inability to perform work. *Id.* However, instead of a broad statement of factors to be considered in determining the degree of permanent partial disability, the 1990 amendments provide a specific formula that is used to determine the degree of permanent partial disability. *See* §§ 52–1–26, –26.1, –26.2, –26.3, –26.4 (effective January 1, 1991). The formula approach to permanent partial disability evidences a legislative intent to tie determination of a worker's degree of disability to objectively measurable criteria. The Parties and Amici agree that the partial disability formula was not taken verbatim from the law of any one state.[2] Because of material differences in the wording of our partial disability statutes, however, cases from other jurisdictions provide little assistance in interpreting our permanent partial disability statutes.

Against the backdrop of legislative history discussed above, we turn now to the specific contentions of the Parties concerning the statutory formula for determining partial permanent disability adopted by the legislature, and as set forth in Sections 52–1–26.1 to –26.4.

*RESIDUAL PHYSICAL CAPACITY*

■ Respondents contend that the Judge erred as a matter of law in determining Claimant's residual physical capacity pursuant to Section 52–1–26.4(B) because the determination took into account Claimant's preexisting heart and lung conditions, as well as the back condition from the work-related injury. Respondents contend that this would only be appropriate if Claimant had proved that the work-related injury caused, aggravated or accelerated the heart and lung conditions.

Section 52–1–26.4(B) provides that a worker shall receive points for the physical capacity modifier "based upon the difference between the physical capacity necessary to perform the worker's usual and customary work and the worker's residual physical capacity." This determination is to be made by a health care provider who meets certain criteria. Section 52–1–26.4(D). Nothing in Section 52–1–26.4 defines the phrase "residual physical capacity" or indicates whether preexisting conditions that affect the capacity to work should be considered in making this determination. Thus, in that respect, we conclude that Section 52–1–26.4 is ambiguous.

Relying on the provisions of the Act and cases that require a worker to establish a causal connection between the injury and the disability, *see* NMSA 1978, § 52–1–28 (Repl. Pamp.1991); *Clavery v. Zia Co.,* 104 N.M. 321, 720 P.2d 1262 (Ct.App.1986); *Holliday v. Talk of the Town, Inc.,* 98 N.M. 354, 648 P.2d 812 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), Respondents contend that Claimant was required to prove that his preexisting condition was aggravated by the work-related accident. Because the Judge found that Claimant's preexisting heart and lung disease were not aggravated or caused by his work-related accident, Respondents argue that the Judge should not have considered Claimant's non-work-related illnesses when determining Claimant's residual physical capacity under Section 52–1–26.4. For the following reasons, we reject Respondents' argument.

■ At the outset, we note that the "causal connection" language of Section 52–1–28 has been left intact during the frequent revisions of the Workers' Compensation Act. We think this indicates a legislative intent to retain the meaning of this statute as explicated in our case law. *See Twin Mountain*

2. The amicus briefs of both the Workers' Compensation Administration and the New Mexico Trial Lawyers Association note that in adopting a formulaic approach to the determination of permanent partial disability, the 1990 amendments enacted by our legislature were influenced in part upon the approach adopted by the Oregon legislature. *See* Or.Rev.Stat. § 656.005(7)(a)(B) (1991). A comparison of both the Oregon and New Mexico statutes, however, reveals numerous differences. Unlike New Mexico, a statutory feature adopted by the Oregon legislature directs that a preexisting condition is not compensable unless the accidental injury with which it combines is the "major contributory cause" of the "disability or need for treatment." Or.Rev.Stat. § 656.005(7)(a)(A), (B). This statutory restriction was omitted from the 1990 New Mexico provisions relating to the method for determining the extent of a worker's permanent partial disability.

*Rock v. Ramirez,* 117 N.M. 367, 369–70, 871 P.2d 1373, 1375–76 (Ct.App.), *cert. denied,* 117 N.M. 802, 877 P.2d 1105 (1994); *Lucero v. Smith's Food & Drug Ctrs., Inc.,* 118 N.M. 35, 878 P.2d 353 (Ct.App.1994). Under established law, however, if a worker's preexisting condition and the accidental injury combine to produce the worker's disability, recovery is authorized for the full extent of such disability. *See Reynolds v. Ruidoso Racing Ass'n,* 69 N.M. 248, 258, 365 P.2d 671, 678 (1961). We think the holdings in *Clavery* and *Holliday,* relied upon by Respondents, are distinguishable from the situation presented here. In *Holliday,* the worker originally suffered a scheduled injury to his hand. Later, he became totally disabled from emphysema. In *Clavery,* the worker suffered a back injury; a year later, she was diagnosed as having breast cancer. In both cases, this Court held that the Workers' Compensation Act does not allow an award of compensation benefits based on later injuries or illnesses that are wholly unrelated to either the employment or the original compensable injury. *See Clavery,* 104 N.M. at 322–23, 720 P.2d at 1263–64; *Holliday,* 98 N.M. at 356, 648 P.2d at 814.

In this case, Claimant was physically impaired prior to his employment, but he was still able to do the heavy work required by his job. Thus, we think the Judge correctly determined that Claimant's usual and customary work was heavy labor. *See* § 52–1–26.4(B). Because of his job-related injuries, the Judge determined that Claimant is no longer able to perform heavy labor and is limited to sedentary work. As Professor Arthur Larson has noted, the total effect of successive injuries is frequently greater than the mere sum of a worker's individual injuries. 2 Arthur Larson, *The Law of Workmen's Compensation* §§ 59.00 to 59.10 (1994); *see also Fierro v. Stanley's Hardware,* 104 N.M. 411, 416, 722 P.2d 662, 667 (Ct.App.1986) (determination of degree of permanent partial disability requires consideration of preexisting impairment to right eye and impairment caused by accidental injury to left eye). In this case, we believe Claimant's situation is similar to that of the worker in *Reynolds;* thus, we conclude that in determining Claimant's residual physical capacity, the Judge correctly applied the applicable law and considered the effects of both the accidental injury and Claimant's preexisting impairment.

*IMPAIRMENT RATING*

Claimant argues that the Judge erred as a matter of law, in using only the impairment rating for Claimant's back injury when determining the degree of his permanent partial disability. He contends that this interpretation of the 1990 permanent partial disability amendments is contrary to the holding in *Reynolds,* which held that an employer is liable for the full extent of a worker's disability, even if part of the disability is due to a preexisting condition. *Reynolds,* 69 N.M. at 258, 365 P.2d at 678. For the reasons discussed below, we agree with Claimant that it was improper to limit his impairment rating under the statutory formula to his back injury alone.

The 1990 Act defines permanent partial disability as "a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment." Section 52–1–26(B) (effective January 1, 1991). NMSA 1978, Section 52–1–24(A) (Repl.Pamp.1991) (effective January 1, 1991), defines "impairment" as

> an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment or comparable publications of the American medical association. Impairment includes physical impairment, primary mental impairment and secondary mental impairment[.]

The impairment rating is critical to the determination of the degree of permanent partial disability because it may become either the degree of partial disability or may serve as the base value subject to modification as provided by the statute. *See* §§ 52–1–26(D), –26.1(A).

*Reynolds* held that an employer was liable for the full amount of a worker's disability that is causally connected to the accidental

injury, even if the worker had a preexisting condition that made his disability more severe than it would otherwise have been. *Reynolds,* 69 N.M. at 258, 365 P.2d at 678; *see also Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 131–32, 767 P.2d 363, 370–71 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). After *Reynolds* was decided, in an effort to ameliorate the consequences of this rule and to encourage the employment of "handicapped" workers, the legislature adopted the Subsequent Injury Act (SIA). *See* 1961 N.M.Laws, ch. 134, §§ 1–14, now codified at NMSA 1978, §§ 52–2–1 to –14 (Repl.Pamp.1991). The SIA provides a mechanism that allows employers who hire or retain "handicapped" workers to limit their compensation liability "as between the employer or its insurance carrier and the subsequent injury fund to the disability attributable to the physical impairment arising from the current injury." Section 52–2–6(C); *Gambrel v. Marriott Hotel,* 112 N.M. 668, 672, 818 P.2d 869, 873 (Ct.App.1991); *see also Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 485, 650 P.2d 3, 7 (Ct.App.), *cert. quashed,* 98 N.M. 478, 649 P.2d 1391 (1982). Where the provisions of the SIA have been complied with, the Subsequent Injury Fund is required to pay the difference between the disability attributable to the current injury and the full disability based on the disability attributable to the preexisting physical impairment, as well as the disability attributable to the work-related injury. *Vaughn,* 98 N.M. at 485–86, 650 P.2d at 7–8.

Because the statutory formula in the Workers' Compensation Act, and the 1990 amendments thereto, for determining a worker's residual physical capacity is silent as to the manner by which a judge is to treat a worker's preexisting physical condition in determining permanent partial disability, we believe that the legislature intended that the formula be interpreted and applied in light of both existing precedent exemplified by *Reynolds* and the SIA. Accordingly, we conclude that the legislature, in enacting Sections 52–1–26 to –26.4, intended that when a worker suffers from a preexisting physical impairment, which combines with the impairment attributable to the work-related injury to produce disability, this impairment must be included in the determination of the impairment rating to be used to determine a worker's permanent partial disability.

## ATTORNEY FEES

We turn next to an examination of Section 52–1–54(F). This provision was added by the 1990 amendments to the Workers' Compensation Act. Among other things, the 1990 amendment to Section 52–1–54 amended the title of the section to include a reference to "offer of judgment." *See* 1990 N.M.Laws (2d S.S.), ch. 2, § 23 (effective January 1, 1991). As it existed prior to the 1993 amendment, Section 52–1–54(F) read:

F. After a recommended resolution has been issued and rejected, but more than ten days before a trial begins, *the employer or claimant may serve upon the opposing party an offer to allow a compensation order to be taken against him for the money or property or to the effect specified in his offer,* with costs then accrued, subject to the following:

(1) if, within ten days after the service of the offer, the *opposing party* serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof, and thereupon that compensation order may be entered as the workers' compensation judge may direct. An offer not accepted shall be deemed withdrawn, and evidence thereof is not admissible except in a proceeding to determine costs. *If the compensation order finally obtained by the party is not more favorable than the offer, that party must pay the costs incurred by the opposing party after the making of the offer.* The fact that an offer has been made but not accepted does not preclude a subsequent offer;

(2) when the liability of one party to another has been determined by a compensation order, but the amount or extent of the liability remains to be determined by further proceedings, *the party adjudged liable* may make an offer, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than ten days prior to the com-

mencement of hearings to determine the amount or extent of liability;

(3) if *the employer's offer* was greater than the amount awarded by the compensation order, the employer shall not be liable for his fifty-percent share of the attorneys' fees to be paid the claimant's attorney; and

(4) if *the employer's offer* was less than the amount awarded by the compensation order, the employer shall pay one hundred percent of the attorneys' fees to be paid the claimant's attorney, and the claimant shall be relieved from any responsibility for paying any portion of his attorneys' fees. [Emphasis added.]

In 1993 the Legislature again amended this statute. *See* 1993 N.M.Laws ch. 193, § 5; § 52–1–54(F) (Cum.Supp.1994). The 1993 amendments specifically indicate a legislative intent that Section 52–1–54(F)(3) apply to offers made by an employer, and that Section 52–1–54(F)(4) apply to offers made by a worker. Effective June 18, 1993, the 1993 amendments to Subsections 52–1–54(F)(3) and (4) read:

(3) if *the employer's offer* was greater than the amount awarded by the compensation order, the employer shall not be liable for his fifty-percent share of the attorneys' fees to be paid the worker's attorney and the worker shall pay one hundred percent of the attorney's fees due to the workers' attorney; and

(4) if *the worker's offer* was less than the amount awarded by the compensation order, the employer shall pay one hundred percent of the attorneys' fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's fees. [Emphasis added.]

We must, however, discern the legislative intent underlying its 1990 version of the statute, since the issue of attorney fees is governed by the law in effect at the time of the disability. *See Bateman v. Springer Bldg. Materials Corp.*, 108 N.M. 655, 657, 777 P.2d 383, 385 (Ct.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989). Thus, the 1990 version, which became effective January 1,

1991, applies to all injuries that became compensable prior to June 18, 1993.

Claimant argues that Section 52–1–54(F) is ambiguous because it is internally inconsistent. In pursuing this argument, Claimant reasons that this Court should reject the literal language of the statute and interpret the statute in light of the obvious intent of the legislature to encourage settlement of cases through offers of judgment and the potential shifting of responsibility for a worker's attorney fees. Respondents, while apparently conceding certain inconsistencies, argue that Claimant is asking this Court to redraft the statute, and that the one-sided statutory scheme is similar to the provisions concerning offers of judgment under the Rules of Civil Procedure. *See* SCRA 1986, 1–068 (Repl.1992). Therefore, Respondents contend that this Court is bound by the plain language of the statute.

Our Supreme Court recently considered similar arguments in *Helman.* In that case, the Court characterized the two different approaches to construction as the " 'plain meaning' " rule and the " 'rejection-of-literal-language' " approach. *Helman,* 117 N.M. at 347, 871 P.2d at 1353. The Court noted that the two different approaches are complementary, not conflicting. *Id.,* 117 N.M. at 352, 871 P.2d at 1358. Thus:

if the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written and not to second-guess the legislature's selection from among competing policies. . . .

But courts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., non-frivolous) differences of opinion concerning the statute's meaning. . . . In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

*Id.,* 117 N.M. at 352–53, 871 P.2d at 1358–59. In *Helman,* our Supreme Court held that the plain language of the statute in question was an obvious legislative mistake. *Id.,* 117 N.M.

at 352, 871 P.2d at 1358. Thus, the Court construed the statute in the manner consistent with the legislative intent, despite the literal language of the statute.

We believe that the 1993 amendments to Section 52–1–54(F)(3) and (4) essentially reiterated and clarified the legislature's intent in adopting its 1990 amendments to these subsections. In arriving at this interpretation, we think this case is similar to *Helman* in that the use of the word "employer" in Section 52–1–54(F)(4) (effective January 1, 1991) was an error in language rather than a deliberate policy choice by the legislature. This interpretation, we believe, is demonstrated by a careful examination of the language of the statute.

The body of Section 52–1–54(F) and the language of the provisions in F(1) and F(2) indicate that the legislature intended to encourage settlement of compensation cases by authorizing both parties to make offers of judgment, and by providing a financial sanction against a party that rejects an offer of judgment and fails to obtain a more favorable outcome at the formal hearing. Reading the statute in its entirety we think militates against any argument that the legislature intended to adopt a one-sided arrangement applicable to offers of judgment. In addition, we think the language of Subsections (3) and (4) indicates that the legislature intended to encourage the acceptance of reasonable offers of judgment through potential shifting of responsibility for some portion of Claimant's attorney fees.

■ The use of the word "employer" in Section 52–1–54(F)(4), however, undercuts these objectives. If the plain language of the statute as enacted is enforced, there is little incentive for either party to make or accept reasonable offers of judgment. We conclude that the legislature, in adopting Section 52–1–54(F), intended to encourage both sides in a workers' compensation proceedings to make and accept reasonable offers of judgment by providing financial sanctions for the rejection of an offer of judgment if the rejecting party does not obtain a more favorable ruling. Accordingly, we hold that the word "employer" in Section 52–1–54(F)(4) was an obvious mistake, and that the legislature intended to use the word "worker." *See Helman,* 117 N.M. at 354, 871 P.2d at 1360.

Because Respondents rejected an offer of judgment from Claimant that was more favorable to them than the decision obtained by Claimant after the formal hearing, Respondents are required under the statute to pay 100% of Claimant's attorney fees incurred in prosecuting his claim.

*CONCLUSION*

In summary, we hold that under the statutory provisions discussed above, when a worker has a preexisting impairment that combines with the impairment from the work-related accidental injury to reduce a worker's physical capacity, the determination of the worker's residual physical capacity is properly based on the combined effect of both impairments. Similarly, when a preexisting physical impairment combines with the impairment from the work-related injury to produce the disability, the preexisting physical impairment must be combined with the impairment caused by the on-the-job injury in order to determine the impairment rating. Finally, Section 52–1–54(F), as enacted in 1990, allows both workers and employers to make offers of judgment that have the effect of shifting responsibility for the payment of a portion of a worker's attorney fees. Accordingly, we affirm the determination of Claimant's residual physical capacity, reverse the determination of Claimant's impairment rating, and reverse that provision of the award of attorney fees providing that fees shall be paid one-half by Claimant and one-half by Respondents. This case is remanded to the Workers' Compensation Administration for entry of a new compensation order that awards benefits based on an impairment rating that reflects the impairments due the heart, lung, and back conditions, and for entry of a new attorney fees order directing that Claimant's attorney fees be paid by Respondents.

Claimant is awarded $2000 for the services of his attorney incident to this appeal.

IT IS SO ORDERED.

APODACA and FLORES, JJ., concur.