2003-NMCA-097

75 P.3d 418

**Henry SMITH, Worker–Appellee,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, Employer– Appellant.**

**No. 22,500.**

Court of Appeals of New Mexico.

June 17, 2003.

Certiorari Denied, No. 28,151, Aug. 4, 2003.

Victor A. Titus, H. Steven Murphy, Titus & Murphy Law Firm, Farmington, NM, for Appellee.

J.E. Casados, Gallagher, Casados & Mann, P.C., Albuquerque, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Arizona Public Service Company (Employer) appeals from the Workers' Compensation Administration's award of workers' compensation benefits to Henry Smith (Worker) for an injury sustained to his ears in a work-related accident. Employer argues that compensation for a scheduled injury awarded pursuant to NMSA 1978, § 52–1–43(B) (1989), must exclude the percentage of impairment to Worker's ears that existed prior to the work-related accident. Worker urges us to apply the enhanced disability concept to his scheduled injury award, compensating him for the total loss of his hearing, as it is a natural and direct consequence of the work-related injury. We hold that the enhanced disability concept (preexisting injury rule) applied in *Edmiston v. City of Hobbs,* 1997–NMCA–085, 123 N.M. 654, 944 P.2d 883 and *Leo v. Cornucopia Restaurant,* 118 N.M. 354, 881 P.2d 714 (Ct.App.1994) is an integral part of the Workers' Compensation Act (the Act) and applies to the scheduled injuries section under the Act where there is no temporary or permanent disability. In short, the present extent of impairment covered as a scheduled injury is to be compensated without factoring out previous causes of impairment. We therefore affirm the Workers' Compensation Judge (WCJ). Employer additionally argues that if this Court were to reverse the WCJ's award, Worker would not be entitled to recover

attorney fees. Because we affirm the award, we do not reach this issue.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} On February 9, 1998, Worker suffered an injury to both ears when a six-inch pipe exploded at Employer's Four Corners Power Plant. Due to this accident, Worker is now required to wear hearing aids to compensate for his profound hearing loss. Prior to the filing of Worker's complaint, Employer began paying Worker indemnity for only ·5% loss of use of both ears, the percentage which it determined was attributable to the February 9 accident.

{3} After a trial on the merits, the WCJ made the following findings of fact:

22. As a direct and proximate result of the accident of February 9, 1998, to a reasonable medical probability, Worker suffered an injury to both ears. The nature of the injury is profound hearing loss. The accident of February 9, 1998 aggravated, exacerbated and combined with pre-existing hearing loss.

. . . .

26. Worker suffered a loss of use to a member appearing in Section 52–1–43(B) of the Workers' Compensation Act. The loss of use is of 59% to both ears.

In addition, the WCJ found that Worker was never temporarily or permanently disabled, as defined under the Act, as a result of the accident.

{4} Although the WCJ found that Worker had experienced hearing loss before the accident, he did not specify what percentage of the combined hearing loss was attributable to Worker's preexisting condition. The evidence presented to the WCJ established that 5 to 10% of Worker's 59% hearing loss was attributable to the accident. Employer does not dispute the total percentage of hearing loss suffered by Worker. Worker was awarded compensation for the total 59% loss of use to both ears.

## STANDARD OF REVIEW

{5} Resolution of this issue involves the interpretation of several provisions of the Act. This Court reviews the interpretation of a statute de novo. *Baca v. Complete Drywall Co.*, 2002–NMCA–002, ¶ 12, 131 N.M. 413, 38 P.3d 181. When construing a statute, our primary goal "is to give effect to the intent of the legislature." *Id.* ¶ 13, 38 P.3d 181 (internal quotation marks and citation omitted). We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole. *Id.* Having ascertained the meaning of the statute, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126–27, 767 P.2d 363, 365–66 (Ct.App.1988).

## DISCUSSION

**Employer's Argument as to Why the Enhanced Disability Concept is Inapplicable to Scheduled Injuries Under the Act.**

{6} Employer contends that Worker is entitled to only the 5% loss of use or impairment to his ears directly caused by the work-related accident because the injury is a scheduled loss injury under Section 52–1–43 of the Act. This section provides for benefits for "disability arising from an accidental injury to specific body members." Section 52–1–43(A). Employer acknowledges that in disability cases, a worker may be entitled to enhanced disability compensation when a worker's preexisting condition combines with the impairment from work-related accidental injury to reduce a worker's physical capacity. However, Employer argues that because Worker's injury is an impairment falling under the Act's scheduled injury provision and not a disability, enhanced disability is not applicable to Worker's combined impairment.

{7} Relying on NMSA 1978, § 52–1–28 (1987), which states that "[c]laims for workers' compensation shall be allowed only . . . when the disability is a natural and direct result of the accident," Employer argues that because there is no ongoing disability, the entire hearing loss Worker now exhibits was not a natural and direct result of the accident, and Worker should therefore not be compensated for the portion of the hearing loss attributable to the preexisting condition.

Employer further argues that to compensate him for the preexisting condition would not be fair to Employer because it would unjustly compensate Worker for an injury that Employer had no part in causing.

{8} Additionally, Employer contends that the analysis used in disability cases does not apply when the result is loss of use to a scheduled member under Section 52–1–43(A). Rather, Employer argues that cases like *Edmiston* and *Leo* are limited to ·situations where the combined ·effect of the preexisting condition and the work-related injury results in a disability which affects a worker's ability to perform on the job. *See Twin Mountain Rock v. Ramirez*, 117 N.M. 367, 369, 871 P.2d 1373, 1375 (Ct.App.1994) (distinguishing impairment, which is '[a]n infirmity or defect that limits the physical functioning of the worker's body[,]' and disability, which 'is a limitation on the worker's capacity to perform work'). Accordingly, Employer reasons that because the combined hearing loss had no impact on Worker's ability to work, requiring it to pay for a preexisting loss of hearing would not be compensation, but rather would produce a windfall to Worker and be unfair to Employer, and this is not the result the legislature intended when it enacted the scheduled injury section of the Act.

**The Scheduled Injury Provision of the Act**

■ {9} The Act awards compensation based on certain formulas applied to certain types of injuries. *See Torres v. Plastech Corp.*, 1997–NMSC–053, ¶ 14, 124 N.M. 197, 947 P.2d 154. In this case, the WCJ found that Worker suffered a scheduled injury which is the total or partial "loss or loss of use" of a "specific body member[ ]" listed in Section 52–1–43(A). The scheduled injury section states:

A. For disability resulting from an accidental injury to specific body members, including the loss or loss of use thereof, the worker shall receive the weekly maximum and minimum compensation for [total] disability ... for the following periods:

....

(43) total deafness in both ears ... 150 weeks

B. For a partial loss of use of one of the body members or physical functions listed in Subsection A of this section, the worker shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function.

Section 52–1–43(A)(B). This Court has construed the scheduled injury section as "providing a simplified method for determining the benefits owed a worker when the sole injury to the worker is the loss or impairment (total or partial) of certain body members or functions." *Twin Mountain Rock*, 117 N.M. at 370, 871 P.2d at 1376.

■ {10} The plain language of the scheduled injury section does not preclude a recovery based on the total impairment resulting from a work-related injury in combination with a preexisting condition. *See* § 52–1–43. In fact, neither the disability sections nor the scheduled injury section of the Act contains language that limits recovery to only the work-related injury, and the plain language of the sections provides no guidance on the effect of preexisting injuries. However, "[w]hen considering sections of the Workers' Compensation Act, we consider the language of the particular section in the context of the entire Act." *Draper v. Mountain States Mut. Cas. Co.*, 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). *Cf. Lucero v. Smith's Food & Drug Centers*, 118 N.M. 35, 37, 878 P.2d 353, 355 (Ct.App.1994) (noting that the scheduled injury section has always been construed independently of disability concepts). Because the statute itself is silent on this issue regarding preexisting injuries in the scheduled injury section, we find it proper to consider the enhanced disability issue in the same context as its application in disability cases, and we also look to the legislative history and purpose of the Act in rendering our decision.

**The Enhanced Disability Concept Should be Applied to Scheduled Injuries**

■ {11} Worker argues that the same principle of enhanced disability applied to claims arising under the disability sections of the Act should apply to cases dealing with

scheduled injuries because there is no distinction between impairment under the disability and scheduled injury sections, and the tort principle of "the employer takes the employee as it finds that employee" is applicable to workers' compensation cases. *See Edmiston*, 1997–NMCA–085, ¶ 25, 123 N.M. 654, 944 P.2d 883. Essentially, Worker argues that the enhanced disability rule should apply to all work place injuries, regardless of which benefits apply when the injury is a direct result of an on the job accident, because that is the purpose of the Act.

{12} To support his contention that enhanced disability should apply to scheduled injuries, Worker relies on the line of disability cases where workers were compensated for their total disability when a preexisting condition combined with the impairment from the work-related injury to produce an overall condition of disability. *Reynolds v. Ruidoso Racing Ass'n*, 69 N.M. 248, 258, 365 P.2d 671, 678 (1961); *Edmiston*, 1997–NMCA–085, ¶ 23, 123 N.M. 654, 944 P.2d 883; *Leo*, 118 N.M. at 359, 881 P.2d at 719. It is well established in New Mexico Workers' Compensation law that "where there is a direct relationship or causal connection between the accidental injury and the resulting disability, the employee is entitled to compensation to the full extent of the disability even though attributable in part to a pre-existing condition." *Reynolds*, 69 N.M. at 258, 365 P.2d at 677. The employer is not only responsible for the aggravation of the prior impairment, but also "the full extent of the impairment 'if the employment aggravated, accelerated, or combined with the [pre-existing] disease or infirmity to produce the death or disability for which compensation is sought.' " *Edmiston*, 1997–NMCA–085, ¶ 21, 123 N.M. 654, 944 P.2d 883 (quoting *Reynolds*, 69 N.M. at 255, 365 P.2d at 676). The appropriate standard for determining compensation in such a circumstance is simply whether or not "the preexisting condition and the workplace injury combined to produce an overall condition of disability." *Id.* ¶ 23, 365 P.2d 671.

{13} Here, the WCJ made a finding that Worker suffered a 59% loss of hearing, and there was substantial evidence to support that finding. This 59% total loss was the result of the work-related injury combined with Worker's preexisting condition, and thus, Worker is entitled to compensation for his total impairment. Given these findings, Employer's argument that Worker's total injury is not a direct result of the accident because Worker is not disabled has no merit.

{14} Employer argues that given the nature and purpose of compensating scheduled injuries, Worker is not entitled to an award for his total hearing loss. Employer contends that the purpose and history of the Act dictate that disability cases be treated differently from those cases falling under the scheduled injury section of the Act. Employer's argument is that one purpose of allowing a worker to recover for the total injury resulting from a work-related injury combined with a preexisting condition is to keep the worker off welfare rolls. *See Casias v. Zia Co.*, 93 N.M. 78, 80, 596 P.2d 521 (Ct.App. 1979). Because those that are disabled will not be able to return to work, it is out of fairness and efficiency that the legislature deems it necessary to compensate workers for the total, enhanced disability. *Id.* Employer maintains that because Worker is not disabled, his ability to work remains, and enhanced compensation is unnecessary and unfair to Employer. We disagree with Employer's contention.

{15} The loss of the worker's ability to work is no longer determinative of the worker's entitlement to or the amount of compensation under the Act after the worker reaches maximum medical improvement. Since the 1990 amendments to the Act, permanent disability is expressly defined in terms of impairment, *see* NMSA 1978, § 52–1–26, which is in turn defined as "an anatomical or functional abnormality existing after the date of maximum medical improvement[.]" NMSA 1978, § 52–1–12(A). Thus, even if a worker can still perform the duties of his or her job, the worker may still be entitled to compensation for a "permanent impairment." Section 52–1–26(B). Permanent partial disability is calculated pursuant to a statutory formula, § 52–1–26(C), and not in accordance with the worker's ability or inability to function at work.

{16} In this particular case, the work-related injury further injured the same organ affected by the preexisting condition. The total injury is therefore the natural and direct consequence of the work-related accident. *See Reynolds*, 69 N.M. at 257, 365 P.2d at 677. Furthermore, "disability" in Section 52–1–43 does not mean one is unable to work. Rather, disabled means "physical impairment." *Witcher v. Capitan Drilling Co.*, 84 N.M. 369, 371, 503 P.2d 652, 654 (Ct.App.1972). Therefore, the fact Worker is not disabled does not limit his recovery to only that portion that stemmed from the accident itself. He is compensated for the full extent of the injury for as long as the schedule dictates.

{17} Given that a purpose of the Act is to compensate injured workers, while also being fair to employers, *Anaya v. N.M. Steel Erectors, Inc.*, 94 N.M. 370, 372, 610 P.2d 1199, 1201 (1980), we find that the legislature did not intend to limit Worker's recovery to only that portion of his injury that was caused by the accident. We find it telling that when our legislature adopted the 1990 amendments to the Act, it was influenced in part by Oregon's workers' compensation act. *Leo*, 118 N.M. at 358 n. 2, 881 P.2d at 718 n. 2. Oregon's statutory restriction directing that a preexisting condition is not compensable unless the accidental injury with which it combines is the "major contributory cause" of "disability or need for treatment," Or.Rev. Stat. § 656.005(7)(a)(B), was omitted from the New Mexico provisions relating to the method for determining the extent of a worker's permanent partial disability.

{18} As in *Reynolds* and *Edmiston*, we hold that employers take their employees as they find them, so as to provide compensation under the Act for the totality of loss that proceeds as a natural and direct consequence of a work-related injury. We hold that the WCJ correctly considered the combined effects of the preexisting hearing loss with the hearing loss attributable to the work-related accident.

**Attorney Fees**

{19} The parties agree that the first issue is dispositive as to the issue of attorney fees.

Having affirmed the WCJ's finding, we also affirm the award of Worker's attorney fees.

**CONCLUSION**

{20} Based on the foregoing conclusions we affirm the WCJ's decision.

{21} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.