This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOHN W. KEMPER,**

Worker-Appellant,

**v.** No. 30,277

**LITHIA OF SANTA FE and
LIBERTY MUTUAL,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Helen L. Stirling, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Allen, Shepherd, Lewis, Syra & Chapman PA
Kimberly A. Syra
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Worker appeals from the workers' compensation judge's (WCJ's) compensation order. We issued a notice of proposed summary disposition, proposing to affirm. Worker has responded to our notice with a memorandum in opposition. We have considered Worker's response and remain unpersuaded that the WCJ erred. We therefore affirm.

On appeal, Worker asks whether the WCJ erred in assessing his permanent partial disability (PPD) benefits. [MIO 9-13] Worker also asks whether the WCJ violated the Workers' Compensation Act by entering the compensation order far outside the mandated thirty days, and if so, what is the consequence of that breach of duty. [MIO 13-21] By not responding to our proposed analysis rejecting Worker's contention that the WCJ manifested an improper bias against him, Worker has abandoned that issue. *See State v. Martinez*, 97 N.M. 585, 586, 642 P.2d 188, 189 (Ct. App. 1982) (stating that a party may abandon an issue by failing to argue it in the memorandum in opposition). Accordingly, we do not address that matter further.

**Permanent Partial Disability**

Worker argues that the WCJ erred in the application of NMSA 1978, Section 52-1-26.4 (2003), by not finding that Worker's usual and customary occupation was as a refrigeration unit repairer, which required heavy physical capacity and should have increased his points for loss of physical capacity modification. [DS 8; MIO 9-10] He argues that he was entitled to modifier values of 64% and PPD benefits at 99%. [DS 9; MIO 12-13]

To the extent that Worker's challenge to PPD benefits involves his usual and customary work, we must interpret the Legislature's intent of the Workers' Compensation Act. Interpretation of a statute is a question of law that we review de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (filed 1997). Our goal in construing a statute is to give effect to legislative intent. *See Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). "[W]hen presented with a question of statutory construction, we begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Society*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. "We also consider the statutory subsection in reference to the statute as a whole and read the several sections together so that all parts are given effect." *Id.*

In the current case, the WCJ rejected Worker's argument that his usual and customary work was heavy, not light. [See RP 307 (¶ 80)] The WCJ ruled, instead, that Worker's accident caused his residual physical capacity to change from light to sedentary, reasoning that this work-related accident did not cause his capacity to change from heavy to sedentary, only light to sedentary. [RP 307 (¶¶ 80-81)] We proposed to agree based on a plain reading of the statute.

Subsection 52-1-26.4(B) states that "[t]he award of points to a worker shall be based upon the difference between the <u>physical capacity necessary to perform</u> the worker's usual and customary work and the worker's residual physical capacity."

3

(Emphasis added.) The table contained in Subsection (B), measuring a worker's residual physical capacity, describes a worker's usual and customary work as "pre-injury physical capacity." Also, Subsection (C) explains that, for purposes of determining the physical capacity modification, the statute examines the type of work performed, ranging from heavy to sedentary and those ranges are defined as "the ability" to lift various pounds in varying frequency.

We disagree with Worker that our proposed analysis read terms into the statute that were unwritten. We agree with the WCJ that, for purposes of determining the physical capacity modification, Worker's usual and customary work would be the type of work he was able to perform prior to the current work-related injury. Although it appeared that Worker mostly had employment that could be identified as heavy, *see Levario v. Ysidro Villareal Labor Agency*, 120 N.M. 734, 736-38, 906 P.2d 266, 268-70 (Ct. App. 1995), it appeared that Worker did not have the ability to perform at heavy capacity at the time of Worker's current work-related injury. *See Moya v. City of Albuquerque*, 2007-NMCA-057, ¶ 22, 141 N.M. 617, 159 P.3d 266 ("In determining [a] [w]orker's disability, the WCJ must consider the difference between [the] [w]orker's physical capacity to perform his usual and customary work and [the] [w]orker's residual physical capacity after the injury."), *rev'd on other grounds by* 2008-NMSC-004, 143 N.M. 258, 175 P.3d 926.

In response to our notice, Worker began with a recitation of the history and purposes of the Workers Compensation Act. [MIO 1-9] He argues that, contrary to the intent of the Legislature, we should see the Act as remedial and construe PPD

4

benefits broadly. [Id.] Our role is to effectuate the intent of the Legislature. *Key*, 121 N.M. at 768-69, 918 P.2d at 354-55. Worker's remedy is to seek change in the legislation, not in the judiciary.

In response to the proposed analysis in our notice, Worker simply disagrees with our reading of the statute and does not assert any new legal or factual argument in support of his position. [MIO 10] Without reason to believe otherwise, we hold that our reading is the correct manner in which to construe the statute. Accordingly, we agree with the WCJ that it would be improper for Worker to be compensated by Employer for the difference between Worker's ability to perform at heavy capacity, when he did not have this capacity at the time of his current, separate injury. [RP 308-09]

As we understand Worker's remaining arguments about PPD benefits, the difference between his usual and customary work found by the WCJ to be light, as opposed to heavy, accounts for the difference between the PPD benefits he was awarded and those to which he claimed entitlement. Worker does not contend otherwise.

Extending his argument that Worker's usual and customary work was heavy, Worker argues that the WCJ should have added his impairment rating from his previous compensation order to his current impairment rating for a total of 99%. [MIO 12] This is not a case involving an aggravated, preexisting injury, however; these are separate and distinct injuries. As we stated in our notice, "the Workers' Compensation Act does not allow an award of compensation benefits based on later

5

injuries or illnesses that are wholly unrelated to either the employment or the original compensable injury." *Leo v. Cornucopia Restaurant*, 118 N.M. 354, 359, 881 P.2d 714, 719 (Ct. App. 1994). Because the record shows that the injuries for which Worker seeks compensation in this case were not the result of preexisting conditions and are separate and distinct from his previously compensated injuries [RP 255, 307-09], we affirm the WCJ's award of PPD benefits, based on the WCJ's understanding of Worker's usual and customary work. *See id.* at 358-59, 881 P.2d at 718-19 (distinguishing between compensation for preexisting conditions and a work-related injury combining for a disability and compensation for injuries wholly unrelated to the injury related to current employment).

**Untimely Entry of the Compensation Order**

Lastly, Worker asks whether the WCJ violated the Workers' Compensation Act by entering the compensation order far outside the mandated thirty days, and if so, what is the consequence of that breach of duty. [DS 9; MIO 13-21]

Our notice observed that Worker did not state that he raised this matter below or that he sought any relief or promptly moved to compel a compensation order. "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of*

6

*Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (filed 2004). Also, we noted that Worker did not explain how he was prejudiced by the late entry of the compensation order. "In the absence of prejudice, there is no reversible error." *State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994); *see In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct. App. 1992) ("On appeal, error will not be corrected if it will not change the result.").

In response to our notice, Worker explains that he received a lump-sum payment and arrears, but complains that the WCJ's delay in rendering a decision caused him to be temporarily destitute. [MIO 14-15, 20] Worker states that he was prejudiced by overdraft charges, having to pawn valuables, having to borrow money from his brother, and by not being able to pay rent for three months. [MIO 20] However, contrary to our instructions in the calendar notice, Worker does not demonstrate that these representations were made to the WCJ. In fact, Worker does not state what relief he believes is appropriate. Without this information, Worker does not establish prejudicial error for which we can provide relief on appeal.

Worker again describes for us the purpose of the Workers' Compensation Act and questions why there are no consequences for an untimely compensation order. [MIO 15-21] Much information Worker relays in his response are not matters of record and are not, therefore, properly before this Court. *See State v. Reynolds*, 111 N.M. 263, 267, 804 P.2d 1082, 1086 (Ct. App. 1990) ("Matters outside the record present no issue for review."). Again, we believe that many of Worker's complaints should be addressed in the political process, not in this Court.

7

For the reasons discussed in this opinion and in our notice, we affirm the compensation order of the WCJ.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**TIMOTHY L. GARCIA, Judge**