The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 9, 2025

**NO. S-1-SC-38405**

**GERALD A. HANRAHAN,**
**on behalf of ALFRED J. MARTIN, JR., deceased,**

Worker-Petitioner,

v.

**STATE OF NEW MEXICO,**
**HUMAN SERVICES DEPARTMENT**
**and RISK MANAGEMENT DIVISION,**

Employer/Insurer-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**David L. Skinner, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Evie M. Jilek
Albuquerque, NM

for Respondent

**OPINION**

**VARGAS, Justice.**

{1}    After suffering multiple injuries following a workplace slip and fall, Alfred J. Martin, Jr. (Worker)[1] obtained over $659,000 in workers' compensation medical and disability benefits. The award of these benefits is not disputed. At issue is whether Worker suffered more than one injury within the meaning of the Workers' Compensation Act (the Act) attorney fees provision, NMSA 1978, § 52-1-54(I) (2013, amended 2025), which limits such fees to $22,500 per "single accidental

---

[1]During the pendency of this appeal, a notice of suggestion of death was filed indicating that Worker, Alfred J. Martin, Jr., died on January 8, 2023. Rule 12-301(A) NMRA of our Rules of Appellate Procedure instructs that, upon the death of a party, "proceedings shall then be had as the appellate court directs." We filed an order informing the parties of our intent to substitute, and provided Worker's attorney an opportunity to respond. He did not. We conclude that allowing substitution here involves no prejudice to Worker or his interests, his death during pendency of the appeal had no effect on our resolution of the issues on appeal, and substituting a party for Worker serves the best interests of the remaining parties and society by resolving an unsettled matter of law. *See State v. Salazar*, 1997-NMSC-044, ¶ 25, 123 N.M. 778, 945 P.2d 996 (holding that an appellate court has authority to appoint a substitute for a deceased party on its own initiative when certain factors are satisfied, including a determination that the interests of the deceased are not prejudiced and that resolution of the matter is in the best interests of society). We therefore substitute Gerald A. Hanrahan for Worker-Petitioner Alfred J. Martin, Jr. The caption in this case has been amended to reflect this substitution. Finally, unless otherwise noted, reference to Worker in this opinion shall continue to refer to Mr. Martin.

injury." For purposes of this opinion, we refer to such amount as one attorney fee cap.

{2}     The Court of Appeals reversed the Workers' Compensation Judge's (WCJ) award of two attorney fee caps, awarding one cap instead. *Martin v. State*, A-1-CA-36527, mem. op. ¶¶ 1, 36 (N.M. Ct. App. June 24, 2020) (nonprecedential). Worker appeals that determination. We affirm the Court of Appeals in part and reverse in part. We affirm the Court of Appeals' determination that Worker failed to preserve his claim that he is entitled to both permanent partial disability (PPD) and permanent total disability (PTD) benefits, *see id.* ¶¶ 31-36, and therefore do not address the issue in this opinion. We reverse the Court of Appeals solely on the attorney fee cap issue, and we remand to the WCJ for the proper determination of attorney fees for three "single accidental injur[ies]" pursuant to Section 52-1-54(I) (2013), keeping in mind that the WCJ must ensure the ultimate fee awarded for each accidental injury is reasonable, Rule 16-105(A) NMRA ("A lawyer shall not make an agreement for, charge[,] or collect an unreasonable fee or an unreasonable amount for expenses.").

**I.     BACKGROUND**

**A.     The Injuries**

{3}     Less than a month after total knee replacement surgery, Defendant suffered a workplace slip and fall on an icy sidewalk (slip-and-fall injury). At the time of the

accident, Worker was employed as an attorney with the New Mexico Human Services Department (Employer). The parties do not dispute that the slip-and-fall injury is a "single accidental injury" within the meaning of Section 52-1-54(I) (2013). Instead, the parties dispute whether injuries after the slip-and-fall injury are also "single accidental injur[ies]" such that a court may award more than one attorney fee cap under Section 52-1-54(I) (2013).

{4}     Because of the fall, Worker underwent a second knee surgery to repair damage to his left knee, after which Worker developed a bacterial infection in his knee followed by lung and heart complications as well as pain and discomfort in his knee, ultimately necessitating a third knee surgery. The infection was treated with a particular antibiotic via a PICC line[2] in Worker's knee. Two weeks after the PICC line was inserted, Worker suffered an unexpected allergic reaction to the antibiotic causing him to develop pneumonia leading to cardiac and respiratory failure and oxygen deprivation. As a result, Worker sustained vision and memory loss, ultimately classified as a traumatic brain injury (allergic-reaction injury). Later, Worker's PICC line was removed, and he was warned of the possibility of a

---

[2]"A peripherally inserted central catheter (PICC), also called a PICC line, is a long, thin tube that is inserted through a vein in [a patient's arm or leg] and passed through to the larger veins near the [patient's] heart." https://www.mayoclinic.org/tests-procedures/picc-line/about/pac-20468748 (last visited July 7, 2025).

pulmonary embolism (PE injury) resulting from the removal, a known complication. Worker suffered the cautioned PE injury. Worker eventually underwent additional surgeries to treat aggravations of his knee injury. Employer paid medical and disability benefits for all of these injuries. However, disputes over treatment eventually arose leading to Worker's compensation complaint[3] and a day-long trial before a WCJ.

**B.    WCJ Decision**

{5}    In the proceedings before the WCJ, the parties stipulated that Worker injured his knee "when he slipped on an icy sidewalk and landed on his left leg" and that "[t]his accident arose out of, occurred within the course and scope of, and was reasonably incident to, [his] employment." The parties also stipulated to the following relevant facts: (1) After "the accident, Employer's supervisor directed him to follow up with his own physicians and to make his own medical decisions," and (2) Employer was required to reimburse Worker for his travel expenses incurred while seeking medical treatment for his work injury.

{6}    After hearing the parties' arguments and reviewing the evidence, which included Worker's medical records, an independent medical evaluation panel report,

---

[3]Although Worker filed his initial complaint in September 2013, the October 2015 complaint is the basis of this appeal.

4

neuropsychological evaluations, and depositions from Worker and approved treating physicians, the WCJ entered a compensation order. This order explained that Worker sustained "two separate and distinct accidents[,] resulting in at least [two] separate and distinct injuries," the slip-and-fall injury, and the allergic-reaction injury. The WCJ also concluded, "As a result of the [slip-and-fall injury] and the 'catastrophic cascade of medical crises' that ensued as a direct result of this accident, Worker suffered a [permanent] brain injury" and so was "entitled to [PTD] benefits." The WCJ also found Worker's attorney was entitled to attorney fees.

{7}     Worker filed his application for attorney fees requesting two caps of attorney fees totaling $45,000, "based upon two accidental injuries (December 9, 2009 [slip-and-fall injury and] December 29, 2010 [allergic-reaction injury]) . . . consistent with [Section] 52-1-54(I) [(2013)]." Employer filed a response to the fee application and a motion to reconsider the compensation order, objecting to, in relevant part, the finding of two dates of injury. Before the hearing on the motion to reconsider, the WCJ granted the requested attorney fees in the amount of $48,290.63 (including tax). The WCJ also ordered Employer to pay one-hundred percent of Worker's attorney fees. *See* § 52-1-54(F)(4) (2013).

{8}     In a hearing on Employer's motion to reconsider, the WCJ clarified that the finding of two workplace accidental injuries was really a finding of two single

"accidental injuries" under "Section 52-1-54[(I) (2013)]." The WCJ explained that because compensability of these injuries was undisputed, he did not believe it was necessary to address NMSA 1978, Section 52-1-28 (1987), governing compensability under the Act. The WCJ denied Employer's motion to reconsider.

**C.    Court of Appeals Memorandum Opinion**

{9}    Among other issues, Employer appealed the award of two attorney fee caps based on a finding of two "accidental injuries." *Martin*, A-1-CA-36527, mem. op. ¶¶ 1, 6. Worker cross-appealed, arguing that the WCJ erred in not finding a third "accidental injury" and awarding a third cap of attorney fees, and in not awarding PPD in addition to PTD. *Id.* The Court of Appeals issued a memorandum opinion affirming the award of PTD benefits and reversing the WCJ's "finding that Worker suffered two compensable accidental injuries and its corresponding additional award of attorney fees." *Id.* ¶ 36. The Court of Appeals reasoned that the evidence only supported one "compensable accidental injury" under Section 52-1-54(I) (2013) because Worker failed "to show that his injuries arose out of his employment," as required by Section 52-1-28(A), the subsection of the Act governing compensability. *Martin*, A-1-CA-36527, mem. op. ¶¶ 12-14. The Court of Appeals declined to address Worker's claim that he was entitled to both PPD and PTD benefits because

the issue was not preserved. *Id.* ¶ 35. We granted Worker's petition for writ of certiorari.

## II. STANDARD OF REVIEW

{10} "[W]e normally review a WCJ's award of attorney fees for an abuse of discretion," *Leonard v. Payday Pro.*, 2007-NMCA-128, ¶ 21, 142 N.M. 605, 168 P.3d 177, but "[w]hen we review a workers' compensation judge's interpretation of statutory requirements and the application of the law to the facts, we apply a de novo standard of review," *Baker v. Endeavor Servs., Inc.*, 2018-NMSC-035, ¶ 15, 428 P.3d 265. Appellate courts are "not required to defer to the WCJ's interpretation of the Act." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 19, 409 P.3d 956 (text only)[4] (citation omitted). "We consider the Act in its entirety, construing each section in connection with every other section." *Id.* (internal quotation marks and citation omitted). And as we consider the meaning of the provisions of the Act, we keep in mind that it represents a "delicate balance between the rights and interests of the worker and the employer," and any judicial analysis under the Act "must balance equally the interests of the worker and the employer without showing bias

---

[4]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

or favoritism." *Gonzalez v. Performance Painting, Inc.*, 2013-NMSC-021, ¶ 9, 303 P.3d 802 (text only) (citation omitted).

{11} "Once we ascertain the meaning of the statute, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Molinar*, 2018-NMCA-011, ¶ 20 (text only) (citation omitted). "Whole record review contemplates a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable." *Leonard*, 2007-NMCA-128, ¶ 10 (text only) (citation omitted). "We will affirm the [WCJ]'s decision if, after taking the entire record into consideration" and applying the law to the facts de novo, "there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* ¶ 10 (internal quotation marks and citation omitted).

**III. DISCUSSION**

{12} The issue on appeal requires us to interpret the meaning of the statutory language "single accidental injury" for purposes of calculating attorney fees under Section 52-1-54(I) (2013).[5] For the reasons that follow, we conclude that the plain

---

[5]To the extent that Employer argues that Worker did not preserve his argument that there were multiple separate "single accidental injur[ies]" under this statute for purposes of attorney fees, we disagree. This issue was sufficiently preserved for our review.

language of the statute indicates a subsequent injury that flows from a primary workplace injury may constitute a "single accidental injury" for purposes of awarding attorney fees under Section 52-1-54(I) (2013). Further, even if the plain language of the statute remained ambiguous, we also conclude as we hereinafter discuss that the policies underlying the statute—ensuring adequate representation of workers while avoiding excessive legal costs—support a reading of Section 52-1-54(I) (2013) that allows a worker to collect an attorney fee cap of $22,500 for the primary injury as well as for each subsequent accidental injury. As applied here, we conclude that the record supports three single accidental injuries to Worker—one primary workplace injury and two subsequent injuries—under Section 52-1-54(I) (2013). Therefore, Worker is entitled to recover up to three attorney fee caps.

**A. Ascertaining the Meaning of "Single Accidental Injury" Under Section 52-1-54(I)**

{13} Under Section 52-1-54(I) (2013), attorney fees are limited to an award of $22,500 per "single accidental injury." *See Meyers v. Western Auto*, 2002-NMCA-089, ¶ 27, 132 N.M. 675, 54 P.3d 79. Specifically, Section 52-1-54(I) (2013) provides,

> Attorney fees, including, but not limited to, the costs of paralegal services, legal clerk services and any other related legal services costs on behalf of a claimant or an employer for a *single accidental injury claim* . . . shall not exceed twenty-two thousand five hundred dollars ($22,500). This limitation applies . . . as a cumulative limitation on

9

compensation for all legal services rendered in all proceedings and other matters directly related to a *single accidental injury* to a claimant.

(emphasis added). Employer contends that all of Worker's injuries resulting from his slip and fall constitute a "single accidental injury" as the term is used in Section 52-1-54(I) (2013), limiting Worker's right to recover attorney fees to a single cap of $22,500. Worker by contrast argues that he is entitled to recover three attorney fee caps: one for his primary injury and one for each of his subsequent injuries. We agree with Worker.

**1.     Defining "accidental injury" within the phrase "single accidental injury" under Section 52-1-54(I)**

{14}    The statutory phrase "single accidental injury" has multiple elements that we consider in turn. Section 52-1-54(I) (2013). We begin by examining the phrase "accidental injury." To "determine and effectuate the intent of the Legislature," we first look to "the plain language of the statute as the primary indicator of legislative intent." *State v. Gutierrez*, 2023-NMSC-002, ¶ 22, 523 P.3d 560 (text only) (citation omitted). "We must give effect to the statute as written without room for construction unless the language is doubtful, ambiguous, or would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason." *Sw. Pub. Serv. Co. v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-012, ¶ 19, 548 P.3d 97 (text only) (citation omitted).

{15}    Initially, we note that nothing in the plain language of Section 52-1-54(I) (2013) indicates that a "single accidental injury" is limited to a primary workplace injury. Nor does the plain language specify that the attorney fee cap constitutes all fees available for the primary workplace injury and any subsequent injury flowing from it. If the Legislature intended the cap to apply to the primary workplace injury and all accidental injuries flowing from it, it could have clearly said so. Because the Legislature did not do so, this Court will not read such language into the statute. *See Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶ 7, 115 N.M. 486, 853 P.2d 737 (explaining that "[a] court will not read into a statute language that is not contained therein").

{16}    Employer argues that "new and distinct work-accidents" are required for a separate cap on attorney fees to apply. We disagree and explain. Section 52-1-54(I) (2013) uses the term "accidental injury," not "accident," to denote how the cap on attorney fees should apply. The difference is significant: the use of "accidental injury" suggests a focus on the injury itself rather than the event that caused it; the word "accidental" simply indicates that the injury came about unexpectedly. *See Victory Sparkler & Specialty Co. v. Francks*, 128 A. 635, 639 (Md. 1925) (noting that the difference between statutory terms "accidental injury" and "accident" in its workers' compensation act is significant because "it marks the divergence between

11

the thing or the event (i.e. accident) and a quality or a condition (i.e. accidental) of that thing or event"). Further, reading the cap as applying *per accident* rather than *per* "accidental injury" would read the term "injury" out of Section 52-1-54(I) (2013)—something we will not do. *See Fahr v. Aaron McGruder Trucking*, 1988-NMCA-041, ¶ 8, 107 N.M. 241, 755 P.2d 85. ("[S]tatutes must be construed so that no word and no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

{17} Examining the statute through this lens, the language of Section 52-1-54(I) (2013) focuses on the total amount of fees available to all attorneys and legal professionals for the administrative proceeding, as well as appeals, related to a "single accidental injury." Our courts have defined an "accidental injury" as "an unlooked-for mishap or some untoward event that is not expected or designed." *Griego v. Patriot Erectors, Inc.*, 2007-NMCA-080, ¶ 8, 141 N.M. 844, 161 P.3d 889 (internal quotation marks and citation omitted); *Salazar ex rel. Salazar v. Cnty of Bernalillo*, 1962-NMSC-014, ¶ 11, 69 N.M. 464, 368 P.2d 141. "Whether an injury can be considered accidental is determined from the perspective of the injured worker. Thus, if a worker does not expect or design the untoward event that leads to his injury, he has suffered an accidental injury for the purposes of the Act." *Griego*, 2007-NMCA-080, ¶ 8. (internal quotation marks and citation omitted). In other

words, "for an injury to be found accidental in New Mexico . . . it must not be foreseeable." *Cisneros v. Molycorp, Inc.*, 1988-NMCA-080, ¶ 18, 107 N.M. 788, 765 P.2d 761.

**2.     Defining "single" in "single accidental injury" under Section 52-1-54(I)**

{18}     Not only must a worker's secondary injury be accidental under Section 52-1-54(I) (2013), it must also be *separate*—a *single* accidental injury—for the WCJ and our courts to accurately count the number of injuries suffered by Worker for the purpose of determining the number of attorney fee caps. The Court of Appeals held that the allergic-reaction injury and the PE injury "were compensable as natural and direct results of the . . . slip-and-fall [injury]" but were not "separate compensable accidental injur[ies]" under Section 52-1-28(A). *Martin*, A-1-CA-36527, mem. op. ¶¶ 13-16. The Court of Appeals reasoned that the allergic-reaction injury and PE injury did not "arise out of" Worker's employment under Section 52-1-28(A) because Worker failed to point to evidence in the record showing that these injuries were "caused by a risk to which [Worker] was subjected . . . in his employment," and therefore Worker was "entitled to only one attorney fees award." *Martin*, A-1-CA-36527, mem. op. ¶¶ 13, 15, 17 (alteration in original) (internal quotation marks and citation omitted).

{19}     We disagree that the amount of an attorney's fees is dictated by Section 52-1-28(A), which plainly addresses causation for purposes of compensability, a question that is uncontested in this case. Instead, we find guidance in *Molinar*, where the Court of Appeals explained that "[w]hether an employer is liable for providing a particular health care service—such as surgery—depends on whether the service is 'reasonable and necessary' and is not part of the causation analysis under Section 52-1-28(A)." 2018-NMCA-011, ¶ 26. The Court of Appeals reasoned that there was nothing "in the plain language of the Act, in our cases interpreting the Act, or that can be gleaned from legislative amendments to it that suggests that Section 52-1-28(A) requires that a worker prove a causal connection between an accident and the need for a particular type of medical treatment." *Id.* Similarly, here, while whether an attorney may be awarded more than one attorney fee cap is related to the compensability of an injury, compensability does not direct the outcome. In this case, the Court of Appeals erred in equating the statutory causation requirements under Section 52-1-28(A) with the award of attorney fees under Section 52-1-54(I) (2013).

{20}     Instead, accidental injuries sustained while undergoing medical treatment for a primary workplace injury are clearly compensable, and the plain language of Section 52-1-54(I) (2013) only ties the attorney fee cap to a "single accidental

14

injury." *See* 1 Lex K. Larson et al., *Larson's Workers' Compensation Law*, Range of Compensable Consequences §§ 10.01-.12 (current through Dec. 2024); *id.* § 10.01 ("The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury."); *id.* § 10.02 ("If an injury is compensable, every natural consequence of that injury is also compensable."); *see also Scott v. Transwestern Tankers, Inc.*, 1963-NMSC-205, ¶ 7, 73 N.M. 219, 387 P.2d 327 ("Medical and surgical treatment is incidental to and a concomitant part of a compensable injury for which the employer is liable under the Act."). That is, Section 52-1-54(I) (2013) does not require Worker to connect the secondary injury—sustained as a result of the primary workplace injury—back to a risk Worker was subjected to in the course of employment to establish a second or third accidental injury to prove entitlement to another attorney fee cap. Such a causal connection is only required for the initial determination of causation for purposes of compensability, and we decline to read language into Section 52-1-54(I) (2013) that does not exist.

{21} Aside from the fact that the statutory causation requirements under Section 52-1-28(A) are distinct from and serve a different purpose than the single accidental injury requirement set forth in Section 52-1-54(I) (2013) for the purpose of

15

calculating attorney fees, it would be nonsensical to require—as the Court of Appeals did—a worker to establish that a surgery or resulting secondary injury took place "in the course of his employment" in the literal sense to receive a second attorney fee cap, *see Martin*, A-1-CA-36527, mem. op. ¶ 14, when such a requirement is not imposed for the compensability of the secondary injury itself, *see* 1 *Larson's* § 10.05 (explaining that "in the strict sense, none of the consequential [secondary] injuries . . . are in the course of employment," but instead are "activities undertaken by the employee following upon his or her injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury"). Indeed, Employer concedes, pursuant to 1 Larson, *supra*, § 10.01, that "'[a] distinction must be observed between causation rules affecting the primary injury . . . and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment.'"

{22}     Put simply, Section 52-1-28(A) dictates when a worker's primary injury is compensable. "But when the question is whether compensability should be extended to a subsequent injury . . . the rules that come into play are essentially based upon

the concepts of 'direct and natural results' and of claimant's own conduct as an independent intervening cause." 1 Larson, *supra*, § 10.01; *accord Smith v. Ariz. Pub. Serv. Co.*, 2003-NMCA-097, ¶ 18, 134 N.M. 202, 75 P.3d 418 (holding that employers must "provide compensation under the Act for the totality of loss that proceeds as a natural and direct consequence of a work-related injury"). By contrast, when the question—as in this case—is whether an attorney is eligible for more than one attorney fee cap under the statute, we examine whether there is more than one separate injury, that is, a "single accidental injury," pursuant to Section 52-1-54(I) (2013), an analysis the Court of Appeals did not perform.

**3.      Under Section 52-1-54(I), the attorney fee cap applies to each discrete accidental injury, not to each accident or to each claim**

{23}      To the extent Employer argues that each individual claim, not each injury, is subject to the attorney fee cap, we also disagree. We instead agree with *Meyers* that the cap on attorney fees applies per accidental injury, not per claim, under Section 52-1-54(I) (2013). 2002-NMCA-089, ¶ 27. In *Meyers*, the worker argued that he was entitled to attorney fees up to the statutory cap for each of his two claims: one for his original claim for benefits and one for the reinstatement of that same claim based on the same injury. *Id.* ¶¶ 6-7, 27. The *Meyers* Court disagreed, reasoning that, while Section 52-1-54(I) (2013) permits a maximum award of attorney fees per "single accidental injury claim[,] . . . subsequent language in this section provid[es] that

17

each injury, and not each individual claim, is subject to the cap." *Id.* ¶ 27 (internal quotation marks omitted). Accordingly, the Court of Appeals awarded the worker a single cap on attorney fees for the worker's single accidental injury. *Id.*

{24}   Here, while Worker also submitted multiple claims for benefits, these claims were based on different injuries, not the reinstatement of a claim for benefits based on the same injury, as in *Meyers*. Consistent with this distinction, the WCJ in this case awarded two attorney fee caps, one for each "single accidental injury" he identified: (1) the workplace slip-and-fall injury and (2) the allergic-reaction injury sustained while Worker was receiving treatment for his work-related injuries. To the extent the WCJ references single "accidental injury claims," the record reflects that the WCJ was actually referring to separate injuries, each with its own claim to benefits under the Act. Accordingly, we conclude that the plain language of the statute indicates a subsequent injury that flows from a primary workplace injury may constitute a "single accidental injury" for purposes of awarding attorney fees under Section 52-1-54(I) (2013).

**4.    Defining "single accidental injury" in Section 52-1-54(I) according to the statute's obvious spirit or reason**

{25}   Even if the definition of "single accidental injury" remained ambiguous, our conclusion is consistent with the "obvious spirit or reason" of the statute. *Sw. Pub. Serv. Co.*, 2024-NMSC-012, ¶ 19 (internal quotation marks and citation omitted).

18

The Legislature intended that the Act "be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers." NMSA 1978, § 52-5-1 (1990) (Workers' Compensation Division, Purpose). "The Act is the result of a legislative balancing involving the subjection of employers to liability without fault for work-related injuries suffered by workers, with a limitation restricting other actions against employers under the exclusivity provisions contained therein." *Mieras v. Dyncorp*, 1996-NMCA-095, ¶ 30, 122 N.M. 401, 925 P.2d 518. "The legislative policy codified in [Section 52-1-54] is to discourage excessive litigation of compensation claims." *Jurado v. Levi Strauss & Co.*, 1996-NMCA-112, ¶ 15, 122 N.M. 519, 927 P.2d 1057. Accordingly, "our ultimate aim is to insure adequate representation of [workers'] compensation claimants," *Woodson v. Phillips Petroleum Co.*, 1985-NMSC-018, ¶ 13, 102 N.M. 333, 695 P.2d 483, *superseded by statute on other grounds as stated in Martinez v. CorrHealth, Pro. Ltd. Liab. Co.*, 771 F. Supp. 3d 1183, 1199 (D.N.M. Mar. 18, 2025), and yet "avoid excessive legal costs so as to not unduly burden employers and their insurers, and to protect an injured worker who without some restriction on an award of attorney fees might have his or her award substantially reduced by legal fees," *Mieras*, 1996-NMCA-095, ¶ 30.

{26} With these policies in mind, we consider whether, by enacting Section 52-1-54(I) (2013), the Legislature intended to limit a worker's attorney fee to $22,500—regardless of the number of subsequent compensable injuries suffered by a worker as a result of a single workplace accident—or whether the Legislature intended to allow a worker to collect an amount up to the $22,500 cap not only for worker's primary injury but also for each subsequent accidental injury. On the one hand, the attorney fee cap limits excessive legal costs, which implicates the interests of both worker and employer. But, we also recognize that "there would be a chilling effect upon the ability of an injured party to obtain adequate representation" if an attorney is denied fees for work completed to prove a subsequent injury that flowed from a primary workplace injury. *Fryar v. Johnsen*, 1979-NMSC-080, ¶ 7, 93 N.M. 485, 601 P.2d 718 (internal quotation marks and citation omitted). Workers will have difficulty acquiring adequate representation if attorneys are required to engage in complex litigation regarding the causation and compensation of each of a worker's subsequent injuries—which, like in this case, may flow from a "'catastrophic cascade of medical crises'"—without being paid for that additional work. We, therefore, conclude that the policies underlying the statute of ensuring adequate representation to workers while avoiding excessive legal costs support a reading of

Section 52-1-54(I) (2013) that allows a worker to collect an attorney fee cap of $22,500 for the primary injury as well as for each subsequent accidental injury.

{27}     Our reading of Section 52-1-54(I) (2013) is sufficiently narrow to ensure that employers have certainty with respect to the amount they are liable for under the Act and are not unduly burdened with legal fees, consistent with the legislative purpose of Section 52-1-54(I) (2013). *See Mieras*, 1996-NMCA-095, ¶ 30. Additional safeguards are also built into the statute to ensure employers and their insurers avoid excessive legal fees. For example, the fee cap contains a cumulative cap irrespective of whether a worker has more than one attorney, and attorneys must show that their fees are reasonable.[6] Section 52-1-54(I) (2013) (providing the $22,500 cap "applies whether the claimant or employer has one or more attorneys"); *see also Fryar*, 1979-NMSC-080, ¶¶ 8, 13 (explaining that, when fashioning an award of attorney fees, the WCJ must consider a number of factors to ensure that the final award is

---

[6]The statute also contains an attorney fee cap on appeals. Relevant here, we recently held that the portion of Section 52-1-54(I) limiting attorney fees on appeal is unconstitutional. *Pena v. State*, 2025-NMSC-___, ¶¶ 54-56, ___P.3d ___ (S-1-SC-40090, July 3, 2025). However, in light of our conclusion that *Pena* applies with selective prospectivity, it does not apply to this case. *Id.* ¶¶ 64-65. Nor does it fundamentally alter our conclusion that the statute contains safeguards to ensure employers and insurers avoid excessive legal fees.

21

reasonable, in addition to the statutory requirements).[7] As a result, in a complicated and novel case where a worker has more than one attorney, but only one accidental injury, the cumulative cap would be $22,500. Finally, data collected by the Workers' Compensation Administration (WCA) at the request of the Legislature shows that the attorney fee cap is reached in only seven percent of workers' compensation cases. *See* HB 66 Fiscal Impact Report, Workers' Compensation Changes at 3 (Feb. 12, 2025) ("House Memorial 83 [2023 legislative session] asked WCA to study workers compensation attorney caps; WCA convened a taskforce to study this issue. The taskforce analyzed WCA claims and noted the majority (93 percent) did not reach the fee cap."). Therefore, defining "single accidental injury" to include subsequent injuries that flow from a primary workplace injury does not unduly burden employers and their insurers with excessive legal fees.

**B.      The Record Supports Three Single Accidental Injuries Under Section 52-1-54(I)**

{28}      Having defined "single accidental injury" under Section 52-1-54(I) (2013), we now address whether substantial evidence supports the WCJ's conclusion that

---

[7]We further note that our rules of professional conduct prohibit unreasonable billing practices, including fee churning, and any attorney found culpable of such conduct is subject to discipline by this Court. Rule 16-105; *see In re Silverberg*, 1989-NMSC-059, ¶¶ 10-11, 108 N.M. 768, 779 P.2d 546 (finding attorney culpable of violating the rules of professional conduct warranting discipline for fee churning).

the slip-and-fall injury and the allergic-reaction injury were single accidental injuries before proceeding to address whether our de novo application of the law to the facts supports that the PE was a third accidental injury. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and the evidence is viewed in the light most favorable to the decision of the WCJ. *Baca v. Emp. Servs. Div. of Hum. Servs. Dep't*, 1982-NMSC-096, ¶ 4, 98 N.M. 617, 651 P.2d 1261 (internal quotation marks and citation omitted).

{29} The parties agree that the slip-and-fall injury was a "single accidental injury" for purposes of awarding attorney fees under Section 52-1-54(I) (2013). The parties also stipulated that Worker later "underwent a second work-related surgery," that a PICC line was eventually inserted, that the allergic-reaction injury was rare and unexpected, and that Worker was cautioned about the possibility of the PE injury he ultimately suffered following removal of the PICC line. But, the parties disagree on whether the subsequent injuries—the allergic-reaction injury and the PE—are "single accidental injuries" that may each be awarded separate attorney fee caps under Section 52-1-54(I) (2013). Worker argues that, along with the initial slip-and-fall injury, the allergic-reaction injury and the PE injury are two additional "single accidental injuries" under Section 52-1-54(I) (2013) because they were unforeseeable, unlooked-for mishaps, not expected or designed. Employer, on the

other hand, argues that there was only one "single accidental injury" in this case—the initial slip-and-fall injury.

{30} We conclude that substantial evidence supports the WCJ's decision that the allergic-reaction injury was a second "single accidental injury" under Section 52-1-54(I) (2013). The record is clear that Worker suffered two separate subsequent injuries—the allergic-reaction injury and the PE injury—that resulted from medical treatment of the initial slip-and-fall injury. It is undisputed that following Worker's primary injury, Employer directed Worker to follow up with his own physicians and to make his own medical decisions. To ensure benefits under the Act for his primary slip-and-fall injury, Worker was required to submit to medical treatment. *See* NMSA 1978, § 52-1-51(I) (2005, amended 2013) (explaining compensation benefits may be terminated for a worker's failure to submit to reasonable medical treatment). And while the allergic-reaction injury and the PE injury arose out of the slip-and-fall injury in a general sense, all three injuries occurred in different parts of the body, in different manners, under different circumstances, and resulted in different disabilities requiring different proof for compensation. *Compare* NMSA 1978, § 52-1-25 (2003) (providing proof requirements for PTD), *with* NMSA 1978, § 52-1-43 (2003) (providing proof requirements for scheduled injuries). The hazards and risks of medical treatment were a direct and natural result of Worker's employment when

24

Employer directed Worker to follow up with his own physicians and to make his own medical decisions, and Worker had a duty to submit to medical treatment for his slip-and-fall injury. Section 52-1-51(I) (2005). The medical treatment exposed Worker to the complications that caused his subsequent injuries. Additionally, because it is undisputed that the allergic-reaction injury was caused by a rare and unexpected reaction to the antibiotic, the evidence supports that this injury was accidental. *See Salazar ex rel. Salazar*, 1962-NMSC-014, ¶ 11 (defining "[i]njury by accident . . . as denoting an unlooked for mishap, or an untoward event which is not expected or designed"); *Cisneros*, 1988-NMCA-080, ¶ 18 ("[F]or an injury to be found accidental in New Mexico . . . it must not be foreseeable.").

{31}    We, therefore, conclude that the allergic-reaction injury was a new and distinct injury, which constitutes a separate single accidental injury under Section 52-1-54(I) (2013). In reaching this conclusion, we do not foreclose the possibility that an aggravation in a future case could qualify as a new single accidental injury for the purposes of determining how many attorney fee caps are available. Whether an aggravation is sufficiently distinct and separate to qualify as a single accidental injury will be a fact intensive inquiry examining the nonexhaustive list of factors identified previously herein, including whether the injuries occurred to different

parts of the body, the manner and circumstances in which the injuries arose, and the disabilities sought. *See, e.g.*, § 52-1-25; § 52-1-43.

{32} In reviewing de novo whether the WCJ correctly applied the law to the facts, we further hold that the WCJ erred in concluding that the PE injury was not a third single accidental injury for purposes of attorney fees. *Baker*, 2018-NMSC-035, ¶ 15 ("When we review a [WCJ]'s . . . application of the law to the facts, we apply a de novo standard of review."); *id.* ¶¶ 32-33 (concluding that the WCJ erred as a matter of law in applying the Act's fee-shifting provision to the facts, thus warranting reversal). As we have explained, the WCJ made factual findings establishing that Worker suffered a PE injury and that the independent medical examination conducted by a panel of physicians assigned a fifteen percent whole person impairment because of Worker's PE injury. Even though the PE injury was foreseeable at the time of the PICC line removal when Worker was warned of its possibility, we analyze whether the subsequent injuries were foreseeable by Worker at the time of the primary workplace injury. *See Cisneros*, 1988-NMCA-080, ¶ 18 (examining foreseeability at the time of the alleged injury, not during subsequent medical diagnosis or treatment); *Griego*, 2007-NMCA-080, ¶ 8 (examining "from the perspective of the injured worker" whether the worker foresaw or *designed the event that led to the injury* (internal quotation marks and citation omitted)). At the

26

time of the slip-and-fall injury, the PE injury was an unforeseeable, "unlooked-for mishap, or [an] untoward event [which was] not expected or designed." *Griego*, 2007-NMCA-080, ¶ 8 (internal quotation marks and citation omitted). Indeed, even though Worker was informed of a general risk of suffering a PE injury, he nevertheless required "emergency treatment" and was admitted to the hospital as a result of the PE injury. Thus, while Worker may have been warned that a PE injury was a risk at the time of the PICC line removal, he could not have foreseen and certainly did not design the emergency PE injury and resulting thrombosis from his slip-and-fall injury.

{33} Accordingly, we affirm the WCJ's conclusion that Worker sustained two accidental injuries under Section 52-1-54(I) (2013) and, in applying the law to the facts de novo, we conclude Worker's PE injury constituted a third single accidental injury. The Court of Appeals' conclusion that there was only one injury is not supported by the definition of "single accidental injury" set forth above or the facts established by the WCJ. *See Martin*, A-1-CA-36527, mem. op. ¶ 16. We instead identify three injuries solely for the purpose of awarding attorney fees—the slip-and-fall injury, the allergic-reaction injury, and the PE injury.

27

## IV. CONCLUSION

{34} We affirm the Court of Appeals' conclusion that Worker failed to preserve his argument that he is entitled to both PPD and PTD benefits, reverse with respect to the attorney fees awarded, and remand to the WCJ for reinstatement of two attorney fee caps, the award of a third attorney fee cap, and a determination of whether the final award is reasonable. It is further ordered that Gerald A. Hanrahan shall be substituted for Worker-Petitioner Alfred J. Martin, Jr. pursuant to Rule 12-301(A).

{35} **IS SO ORDERED.**

_____
**JULIE J. VARGAS, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**C. SHANNON BACON, Justice**

_____
**NANCY J. FRANCHINI, Judge**
**Sitting by designation**

28